## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| **EARL THOMPSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 3:20-cv-381 (VLB)** |
| | : | |
| **ROLLIN COOK, et al.,** | : | |
| **Defendants.** | : | |
| | : | |

### RULING ON MOTION TO DISMISS

The plaintiff, Earl Thompson, commenced this civil rights action *pro se* against eleven defendants: Rollin Cook, Dr. Jonny Wu, Anthony Corcella, Scott Semple, Carlos Nunez, Kathleen Maurer, Mary Ellen Castro, Loreen Williams, Henry Falcone, Deniese Dilworth, and Steven Faucher.  On April 14, 2020, the Court dismissed all claims except the Eighth Amendment claim for deliberate indifference to serious medical needs against the defendants in their individual and official capacities.  Doc. #11.  The defendants have filed a Motion to Dismiss the individual capacity claims against defendants Maurer, Wu, Castro, Williams, Cook, Corcella, Nunez, and Faucher arguing that plaintiff fails to state cognizable claims, they are protected by qualified immunity.  They also move to dismiss the claims for injunctive relief against defendants Cook, Corcella, Nunez, Faucher, Semple, Falcone, and Dilworth on the ground that the claims are moot.  Plaintiff has filed a memorandum in opposition and an Amended Complaint.  As the defendants address the Amended Complaint in their reply memorandum, the

Court considers the defendants' motion as applied to the Amended Complaint.

For the following reasons, the defendants' motion is granted in part.

### I. Standard of Review

To withstand a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard is not a probability requirement; the pleading must show, not merely allege, that the pleader is entitled to relief. *Id.* Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id.* However, when reviewing a motion to dismiss, the court must accept the factual allegations in the operative complaint as true and draw all reasonable inferences in the non-movant's favor. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012).

If, on a motion to dismiss, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, extrinsic evidence that is attached to the pleadings or incorporated by reference may be considered on a motion to dismiss as well as matters of which judicial notice may be taken. *See New York Pet Welfare Ass'n, Inc. v. City of New York*, 850 F.3d 79, 86 (2017).

## II.  Facts

Plaintiff alleges the following facts in the Amended Complaint.  Plaintiff suffers from severe lower back pain and constant numbness on the right side of his body.  Doc. #32 ¶¶ 14, 17.  His discomfort causes him to stand and walk about his cell during the day and night.  *Id.* ¶ 15.  He often is unable to sleep or get into his bunk.  *Id.*  Walking about his cell at night causes conflict with other inmates because it prevents them from sleeping.  *Id.* ¶ 16.  Plaintiff, like most inmates, is confined in his cell 21-22 hours per day with much of that time spent on his bunk. *Id.* ¶ 18.

Medical staff told plaintiff that his back pain is caused by his mattress but that issuance of mattresses is a custody issue. *Id.* ¶ 40.[1]  Since learning this, plaintiff has been asking prison officials for a double mattress and an egg-crate mattress topper.  *Id.*  An unidentified official told plaintiff that he could have it if approved by the medical unit.  *Id.*  On January 2, 2020, plaintiff wrote to Commissioner Cook about the mattress issue.  *Id.* ¶ 41.  He did not receive a response.  *Id.*  On February 7, 2020 and again on February 18, 2020, plaintiff wrote to Warden Corcella requesting a double mattress because even a new mattress goes flat in a few months.  *Id.* ¶ 42. Since 2012, plaintiff has been speaking wardens, deputy wardens, nurses, doctors, lieutenants, captains, and commissioners about his pain caused by the mattress.  *Id.* ¶ 43.  Nothing has been done.  *Id.*

Over the past ten years, plaintiff has been prescribed pain medication when

---

[1] Plaintiff included no paragraphs numbered 19-39.

his condition can only be corrected with a proper mattress.  *Id.* ¶ 44.  Plaintiff had a negative reaction to one pain medication.  *Id.* ¶ 45. In February 2020, plaintiff wrote to Deputy Warden Nunez who forwarded the letter to the medical unit.  *Id.* ¶ 46. On February 10, 2020, Dr. Feder saw plaintiff for his complaints of back pain. *Id.* ¶ 47.  Dr. Feder said that, although plaintiff's pain may be caused by his mattress, issuance of mattresses was a custody issue and he could not get plaintiff a new mattress.  *Id.*

In October 2009, then Warden Semple told plaintiff that the mattress issue would be investigated but, to date, nothing has been done.  *Id.* ¶ 48.  In April of an unidentified year, Warden Falcone denied plaintiff's request for a double mattress.  *Id.* ¶ 49.  In June 2017, Deputy Warden Dilworth denied plaintiff's request for a double mattress or an egg-crate topper stating that the warden had already denied the request.  *Id.* ¶ 50.

Plaintiff has told all defendants about the rapid degradation of the mattresses and the resulting pain but they do nothing.  *Id.* ¶ 52.

On June 6, 2017 plaintiff filed a grievance against Falcone and Dilworth but the grievance was never answered.  *Id.* ¶ 53.  The grievance officer told plaintiff that he should not have come to prison if he needed a double mattress.  *Id.*

Plaintiff filed a second grievance on February 20, 2020.  *Id.* ¶ 54.  That same day he received a written acknowledgment of his letter regarding his mattress from Warden Corcella.  *Id.*  Also on February 20, 2020, plaintiff received a new mattress.  *Id.* ¶ 55.  Plaintiff was able to sleep comfortably for thirteen days before the mattress went flat in the middle.  *Id.*

4

### III.  Discussion

In the Amended Complaint, plaintiff asserts an Eighth Amendment claim for deliberate indifference to his serious medical needs, a Fourteenth Amendment equal protection claim, and claims for violation of his rights under Article first, sections 8 and 9 of the Connecticut Constitution.  In the Initial Review Order, filed April 14, 2020, the Court dismissed the equal protection claim, Doc. #11 at 11-12, and the claim under Article first, section 9, *id.* at 10-11.  Plaintiff alleges no facts that would alter the Court's decision.  Accordingly, the Fourteenth Amendment equal protection claim and the claim under Article first, section 9 remain dismissed.

In addition, the Connecticut Supreme Court has not recognized a private right of action under Article first, section 8.  *See Goldberg v. Town of Plainfield*, 148 F. Supp. 3d 168, 187-88 (D. Conn. 2015) (declining to exercise supplemental jurisdiction over state constitutional claim under Article first, section 8 because decision to recognize private right of action under this section raises novel or complex issues of state law); *see also Doe v. Mastoloni*, No. 3:14-cv-718(CSH), 2016 WL 593439, at *17 (D. Conn. Feb. 1, 2016) (declining to exercise supplemental jurisdiction over state constitutional claims, including violation of Article first, section 8, where state courts have declined to recognize a private right of action) (citing cases).  Accordingly, the Court declines to exercise supplemental jurisdiction over plaintiff's claim for violation of Article first, section 8.  The Court considers the defendants' motion to dismiss as applied to the one remaining claim, the Eighth Amendment deliberate indifference claim.

The defendants move to dismiss on four grounds: (1) plaintiff fails to state a claim against the medical defendants, Dr. Mauer, Dr. Wu, Mary Ellen Castro, and Loreen Williams, and failed to allege facts demonstrating their personal involvement in any constitutional violation; (2) plaintiff fails to allege facts supporting the personal involvement of defendants former Commissioner Cook, former Warden Corcella, Deputy Warden Nunez, and Warden Faucher to support claims against them in their individual capacities; (3) defendants Cook, Corcella, Nunez, and Faucher are protected by qualified immunity as it was not clearly established that receipt of a letter is sufficient to establish personal involvement; and (4) all official capacity claims against defendants Cook, Corcella, Nunez, and Faucher are moot because these defendants have retired or moved to positions from which they cannot provide the requested injunctive relief, and the claims for injunctive relief against defendants Semple, Corcella, Falcone, and Dilworth are moot because these defendants were named as wardens or deputy wardens at Garner Correctional Institution, positions none of them hold at this time.  Finally, the defendants seek to substitute as official capacity defendants Acting Commissioner Angel Quiros and Warden Robert Martin pursuant to Federal Rule of Civil Procedure 25(d).

I.     <u>Defendants Mauer, Wu, Castro, and Williams</u>

Defendants Mauer, Wu, Castro, and Williams are named in their individual capacities only.  To obtain an award of damages against them, plaintiff must allege facts showing that each defendant was personally involved in the alleged constitutional violation.  *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

6

In his description of the defendants, plaintiff states that Dr. Wu is the medical director for Correctional Managed Health Care, Dr. Maurer is the medical director for the Department of Correction, defendant Castro is the Correctional Managed Health Care medical director to the Department of Correction, and defendant Williams is an APRN at Corrigan Correctional Institution ("Corrigan"). Defendant Williams is the only one of the four defendants alleged to have treated him.  Plaintiff does not mention any of these defendants in his statement of facts. Plaintiff filed the amended complaint in response to the motion to dismiss.  He did not, however, allege any facts to address the defendants' claim that he failed to allege facts showing that they were personally involved in the denial of a double mattress.  In his memorandum, plaintiff states he also is asserting a claim that medical staff failed to treat his pain and that defendant Williams prescribed the medication to which he had an adverse reaction.  Although he argues that, over the years, he submitted many requests to the medical unit regarding his complaints he conceded that he has never spoken to defendants Maurer or Castro.

Plaintiff does not allege that defendants Wu, Maurer, or Castro worked at a correctional facility in which he was incarcerated and does not allege that he communicated with them about his treatment.  Further, he alleges that the mattress policies, specifically no double mattresses, no egg crate toppers, and mattress exchanges only once a year, are custody policies and not medical policies.  As the medical defendants have no control over custody issues and defendants Wu, Maurer, and Castro are not alleged to be involved in plaintiff's

medical care, the defendants' motion to dismiss is granted as to the claims against defendants Wu, Maurer, and Castro for lack of personal involvement.

Plaintiff alleges that defendant Williams is an APRN at Corrigan. **To state a claim for deliberate indifference to a serious medical need, plaintiff must show both that his need was serious, and that the defendant acted with a sufficiently culpable state of mind.** *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

There are both objective and subjective components to the deliberate indifference standard. Objectively, the alleged deprivation must be "sufficiently serious." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000).

8

The defendant also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. She must have been actually aware of a substantial risk that plaintiff would suffer serious harm as a result of her actions or inactions. The defendant "need only be aware of the risk of harm, not intend harm." *Id.* Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Salahuddin*, 467 F.3d at 279-80. Nor does a disagreement over the treatment provided show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment …. [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citations omitted)).

Plaintiff alleges only that defendant Williams prescribed medication to address plaintiff's complaints of pain and he had an adverse reaction to the medication. This allegation suggests, at most, negligence, which is not cognizable under section 1983. The fact that plaintiff may have preferred a different treatment also is not cognizable under the Eighth Amendment. The defendants' motion to dismiss also is granted on the claim against defendant Williams.

II.   Personal Involvement of Defendants Cook, Corcella, Nunez, and Faucher

The defendants next argue that plaintiff fails to allege facts showing the

personal involvement of defendants Cook, Corcella, Nunez, and Faucher to support claims against them in their individual capacities.  Plaintiff specifically alleges that he wrote letters to defendants Cook, Corcella, and Nunez about the mattress policy and his related medical issues.

Defendants Cook, Corcella, Nunez, and Faucher are supervisory officials. To state a claim for supervisory liability, **plaintiff must show that:**

> **"(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring."**

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

Plaintiff alleges no facts regarding defendant Faucher.  Although the lack of reference to defendant Faucher was noted in the motion to dismiss, plaintiff did not correct that omission in his amended complaint.  Absent any allegations against him, plaintiff has not alleged facts to support defendant Faucher's personal involvement in his claims.  The defendants' motion to dismiss is granted as to any claims against defendant Faucher.

In *Grullon v. City of New Haven*, 720 3d 133 (2d Cir. 2013), the Second Circuit held that a letter "to the Warden at an appropriate address and by appropriate means" was sufficient to state a plausible claim that the warden was aware of the incident and to warrant discovery regarding his knowledge and

10

response.  *Id.* at 141.  The court noted, however, that proof of knowledge and lack of action in response would be required to survive summary judgment. *Id.* at 140-41.

The defendants argue that merely receiving a letter is insufficient to establish personal involvement.  While the defendants' argument would apply on a properly supported motion for summary judgment, this case is before the Court on a motion to dismiss.  In light of *Grullon*, plaintiff's allegations that he wrote to defendants Cook, Corcella, and Nunez, are sufficient to state a plausible claim for supervisory liability and permit him to engage in discovery on his claims.  The motion to dismiss is denied as to defendants Cook, Corcella, and Nunez on this ground.

III.    Qualified Immunity

The defendants argue that defendants Cook, Corcella, Nunez, and Faucher are protected by qualified immunity as it was not clearly established that receipt of a letter is sufficient to establish personal involvement.  As the Court has determined that defendant Faucher was not personally involved in any of plaintiff's claims, the Court considers this argument as to defendants Cook, Corcella, and Nunez only.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity may be asserted on a motion to dismiss because

11

"qualified immunity provides government officials 'immunity from suit rather than a mere defense to liability.'" *Looney v. Black*, 702 F.3d 701, 705 (2d Cir. 2012) (quoting *Pearson*, 555 U.S. at 231).  However, a defendant asserting a qualified immunity defense on a motion to dismiss must overcome a "formidable hurdle," *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004), as "'the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.'" *Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) (quoting *McKenna*, 386 F.3d at 436).  A defense of qualified immunity will support a motion to dismiss, therefore, only if the plaintiff cannot state any facts that would prevent application of qualified immunity. *McKenna*, 386 F.3d at 436.

In considering whether a state official is protected by qualified immunity, the court must determine "(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).  Thus, qualified immunity would be denied to an official only if (1) the facts alleged or shown by the plaintiff state a violation of a statutory or constitutional right by the official and (2) the right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).  The district court has the discretion to determine, in light of the particular circumstances surrounding the case, which of the two prongs of the qualified immunity standard

12

to address first.  *See Johnson v. Perry*, 859 F.3d 156, 170 (2d Cir. 2017) (quoting *Pearson*, 555 U.S. at 236).

The defendants argue that the law was not clearly established because the district courts within the Second Circuit are split regarding whether reviewing or responding to a grievance establishes personal involvement in the underlying constitutional violation.  *See Young v. Choinski*, 15 F. Supp. 3d 172, 191-92 (D. Conn. 2014) (describing circuit split).

As the Court explained above, an allegation that a prisoner sent a letter to prison officials is sufficient to warrant discovery on whether the official received the letter and what action, if any, he took in response to the letter.  Without a review of the results of that discovery, the Court cannot determine whether plaintiff can allege facts that would defeat qualified immunity.  The motion to dismiss on this ground is denied without prejudice.  The defendants may reassert this argument at a later stage of litigation.

## IV.    Official Capacity Claims

Plaintiff names defendants Cook, Corcella, Nunez, Faucher, Semple, Falcone, and Dilworth in their official capacities and seeks injunctive relief in the form of medical treatment and an order for a permanent double mattress and eggcrate topper.  The defendants contend that the claims against defendants Cook, Corcella, Nunez, and Faucher are moot because these defendants have retired or moved to positions from which they cannot provide the requested injunctive relief.

The defendants state that defendant Cook has left state service and

defendant Faucher is no longer the warden at Corrigan.  They seek to replace these defendants with Acting Commissioner Angel Quiros and Warden Robert Martin for all official capacity claims pursuant to Federal Rule of Civil Procedure 25(d).  The defendants' request is granted.  The Clerk is directed to substitute Acting Warden Angel Quiros for Commissioner Cook in his official capacity, and Warden Robert Martin for Warden Faucher in his official capacity.

The defendants state that plaintiff named defendants Semple, Corcella, Falcone, and Dilworth in their capacities as wardens or deputy wardens at Garner Correctional Institution.  Plaintiff is no longer confined there.  An inmate's transfer to a different correctional facility generally moots claims for injunctive relief against staff at the former facility.  *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam).  As officials at Garner Correctional Institution no longer have control over plaintiff's medical care or conditions of his confinement, the requests for injunctive relief against these four defendants are denied.

The official capacity claims are dismissed as to defendants Cook, Faucher, Semple, Corcella, Falcone, and Dilworth.[2]  The claims remain pending against defendant Nunez.  In addition, Acting Commissioner Quiros is substituted as defendant in his official capacity in place of defendant Cook, and Warden Martin is substitutes as defendant in his official capacity in place of defendant Faucher.

### IV. Conclusion

---

[2] The defendants also state that defendants Semple, Corcella, Falcone, and Dilworth have retired from state service.  However, they point to no facts in Amended Complaint, or of which judicial notice may be taken, supporting this statement.  Thus, the Court does not rely on this assertion in deciding the motion to dismiss.

14

The motion to dismiss [Doc. #28] is GRANTED in part.   The motion is granted as to the individual capacity claims for damages against defendants Maurer, Wu, Castro, Williams, and Faucher and denied as to the remaining defendants.  The motion to dismiss is granted as to the official capacity claims for injunctive relief.  The claim for injunctive relief remains pending as to defendant Nunez as the motion to dismiss was not directed to the official capacity claims against him.

In addition, the defendants' request to substitute Acting Commissioner Quiros as defendant in his official capacity in place of defendant Cook, and Warden Martin as defendant in his official capacity in place of defendant Faucher is GRANTED.  The Clerk is directed to add Acting Commissioner Quiros and Warden Martin as defendants in their official capacities.

The case will proceed on individual capacity claims for damages against defendants Cook, Corcella, Nunez, Semple, Falcone, and Dilworth and the official capacity claims for injunctive relief against defendant Nunez and against substituted defendants Acting Commissioner Quiros and Warden Martin.

SO ORDERED.

Dated at Hartford, Connecticut.

_____
Vanessa L. Bryant
United States District Judge